## UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS                    CIVIL ACTION NO:

BHARANIDHARAN PADMANABHAN MD PhD )
                (Dr. Bharani)      )
                - PLAINTIFF     )    JURY TRIAL DEMANDED
                                 )

vs.                           )

MAURA HEALEY               )
STEVEN HOFFMAN           )
CHRIS CECCHINI            )
ADELE AUDET              )
JAMES PAIKOS             )
LORETTA KISH COOKE      )
JOHN DOES                )
JANE DOES                )
                - DEFENDANTS )

## COMPLAINT

## PLAIN AND CONCISE STATEMENT OF CLAIM

Defendants conspired together and intentionally engaged in unauthorized access and

access exceeding authorization to a protected computer and protected database in

conscious intentional violation of 18 U.S.C. 1030 (CFAA), conscious intentional

violation of Massachusetts regulation 105 CMR 700.012, conscious intentional

violation of 18 U.S.C. 2701 (SCA) and the Clean Hands Doctrine and as a direct result

caused Plaintiff severe and irreparable damages and losses exceeding $5000 in one

calendar year.

## JURISDICTION

1    This Court has original jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C.

    § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

2    Medicaid is a Federal program that distributes Federal tax dollars.

3    The Medicaid Fraud Division at the Attorney General's Office (AGO) serves as the
      Medicaid Fraud Control Unit for the Commonwealth of Massachusetts and is annually
      certified by the Secretary of the U.S. Department of Health and Human Services.

4    The Medicaid Fraud Division at the AGO is funded by Federal tax dollars to the level of
      75% of it's annual budget. For 2015 the budget is $4,033,878. Therefore approximately
      $3 Million of this comes from Federal funds.

5    The Prescription Monitoring Program (PMP) is a computer database managed by the
      Drug Control Program (DCP), a Government entity within the Department of Public
      Health (DPH) and so within the Executive Office of Health and Human Services (HHS)
      of the Commonwealth of Massachusetts. The online computer database (PMP) has
      received Federal grants, especially from the Department of Justice, based on the U.S.
      Department of Justice Appropriations Act (Public Law 107-77), at approximately
      $400,000 every two years, to enhance interstate communication, a Federal goal.

6    18 U.S.C. § 1030 "The Computer Fraud and Abuse Act" and 18 U.S.C. § 2701 "Stored
      Communications Act" are Federal statutes.

2

7   This Court has supplemental jurisdiction over Defendants' violation of Massachusetts

    regulation 105 CMR 700.012 because said violation is inextricably intertwined with their

    violation of the Federal CFAA.

## PARTIES

8   At all times relevant to this action Defendant Maura Healey was and is the Attorney

    General for Massachusetts and the ultimate authority with power to authorize actions by

    her office. Defendant Maura Healey resides and works within this District.

9   At all times relevant to this action Defendant Chris Cecchini was and is an Investigator at

    the Office of the Massachusetts Attorney General. Defendant Chris Cecchini resides and

    works within this District.

10  At all times relevant to this action Defendant Steven Hoffman was and is the Deputy

    Chief of the Medicaid Fraud Division at the Office of the Massachusetts Attorney

    General. Defendant Steven Hoffman resides and works within this District.

11  At all times relevant to this action Defendant Adele Audet was and is the Assistant

    Director of the Drug Control Program (DCP) at the Massachusetts Department of Public

    Health (DPH) and is responsible for the proper management and use of the Prescription

    Monitoring Program computer database (PMP) as well as liaison with law enforcement

    agencies. Defendant Adele Audet resides and works within this District.

12    At all times relevant to this action Defendant James Paikos was and is Complaint Counsel
      and Investigator for the Enforcement Division at the Board of Registration in Medicine
      (an agency within Massachusetts HHS). Defendant James Paikos resides and works
      within this District.

13    At all times relevant to this action Defendant Loretta Cooke was and is an Investigator
      for the Enforcement Division at the Board of Registration in Medicine (an agency within
      Massachusetts HHS) and serves as the assistant/collaborator for Defendant James Paikos.
      Defendant Loretta Cooke resides and works within this District.

14    At all times relevant to this action Defendant Jane Doe was an agent of the Office of the
      Massachusetts Attorney General or the Massachusetts State Police. Her identity remains
      unknown as she refused to identify herself when politely asked.

15    There may be other Defendants Jane Does and John Does similarly unidentified who may
      be revealed during legal discovery.

16    Plaintiff Dr. Bharani is a neurologist who specialises in multiple sclerosis and resides and
      practices within this District.

### VENUE

17    Venue is proper in this District pursuant to 18 U.S.C. 1391 as each Defendant is resident
      and works within this District.

4

18    Plaintiff Dr. Bharani is resident and practices within this District.

19    All of the actions alleged in this complaint occurred within this District.

## BACKGROUND FACTS

20    In March 2013, Plaintiff Dr. Bharani filed a written criminal complaint with the
      Massachusetts Attorney General against the then Director of the Massachusetts Office of
      Medicaid, Dr. Julian Harris, documenting the aiding and abetting of Medicaid Fraud by
      Dr. Harris.

21    In May 2013, at the Massachusetts Medical Society, Plaintiff Dr. Bharani personally
      informed Defendant Assistant Attorney General Steven Hoffman about his written
      criminal complaint and that no action seemed forthcoming from the Massachusetts
      Attorney General. Defendant Hoffmann was then and is now the Deputy Chief of the
      Medicaid Fraud Division.

22    The Massachusetts Attorney General has ignored that criminal complaint to this day. Not
      once has the AGO responded to Plaintiff to enquire about his complaint. The complaint
      was sent twice via certified mail and also mentioned in an open letter published in a local
      newspaper in 2013. Attorney General Coakley and her office were fully aware.

23    For two years Plaintiff Dr. Bharani had documented repeatedly to Defendant James
      Paikos' employer (the Board of Registration in Medicine, an agency within

5

Massachusetts HHS), that Defendant James Paikos had (in violation of 18 U.S.C. § 371) aided and abetted Medicaid Fraud at the Cambridge Public Health Commission ("Cambridge"), a public instrumentality established by the Massachusetts Legislature, and had used old medical records and a fabricated report paid for by Cambridge and provided to him by Cambridge in 2011, while claiming he had instead done an independent good faith investigation through 2013, as required by M.G.L. Ch. 112 § 5. It was repeatedly made clear that the absence of any medical records from 2012 in Defendant Paikos' possession was proof of his guilt.

24      Plaintiff Dr. Bharani had also repeatedly documented on the record that the absence of any records not tainted by Cambridge, from the period 2011-2012, proved that Defendant Paikos had violated state law and aided and abetted Medicaid Fraud by Cambridge when he demanded in January 2013 that Plaintiff Dr. Bharani's license be suspended.

25      Plaintiff Dr. Bharani filed another written criminal complaint with Defendant Attorney General Healey specifically against Defendant James Paikos in January 2015. While Defendant Attorney General Healey has the time, resources and will to investigate fantasy football and issue daily press releases, Defendant Attorney General Healey officially declined to investigate Defendant James Paikos' aiding and abetting of Medicaid Fraud.

26    Even worse, instead of investigating Defendant James Paikos, Defendant Attorney
      General Healey chose to defend him in a private civil action by not denying Defendant
      Paikos' overt criminal acts but by claiming quasi-judicial immunity for him.

27    To this day Defendant Attorney General Healey has not officially denied that her client,
      Defendant Paikos, committed overt criminal acts.

28    In or about April 2015, Defendants accessed the protected computer hosting the protected
      database of the Massachusetts Prescription Monitoring Program (PMP) to identify and
      procure a list of patients treated by Plaintiff Dr. Bharani. From a full list of his patients,
      16 were selected because they are on Medicaid.

29    Plaintiff Dr Bharani can fully prove beyond even a shadow of a doubt that this protected
      computer database (PMP) was accessed to select this list of patients. This list could not
      have been compiled from any other source on earth. This list could not have been
      compiled (in express violation of 105 CMR 700.012) without the knowledge and
      approval of Defendant Adele Audet, the DCP liaison with law enforcement.

30    Defendants stated the reason for their procuring this list of patients is that they had
      "information that suggested a violation of ... the Social Security Act had occurred" and
      that the Medicaid Fraud Division was "investigating allegations of violations of the rules
      and regulations governing the conduct of certain providers and recipients of Medicaid
      benefits." EXHIBIT 1

31    As a matter of law the access and search of the protected computer database (PMP) by

the Defendants was explicitly unlawful and a severe egregious chilling violation of the

explicitly-protected privacy rights of Plaintiff's patients as well as those of all residents

of Massachusetts who have been explicitly promised this privacy by Government

regulation 105 CMR 700.012.

32    According to Massachusetts HHS -

> *"The Massachusetts Prescription Monitoring Program (MA PMP) is a tool that*
> *supports safe prescribing and dispensing and assists in addressing prescription*
> *drug misuse, abuse and diversion."*

33    The 2013 annual report from HHS/DPH/DCP to the Massachusetts Legislature claims:

> *"DCP allows law enforcement and regulatory agencies to obtain case reports in*
> *support of open and ongoing **controlled-substances related investigations**. Case*
> *reports must be specific to a particular prescriber, pharmacy or person. In*
> *accordance with the terms and conditions of use, investigators registered with the*
> *PMP may also use the online system to obtain this information. However, it is*
> *strictly prohibited to use the MA Online PMP as part of routine inspections, for*
> *general screening, or any other manner not in support of an already open and*
> *ongoing investigation. In fact, DCP requires regulatory and law enforcement*
> *employees to provide background case information relevant to a specific PMP*
> *request via an online form."* [Emphasis added.]

34    Massachusetts Regulation 105 CMR 700.012 is totally explicit in requiring that law

enforcement have legitimate access to the confidential prescription data only in the

exclusive context of a "drug-related" investigation, not for any other non-drug-related

investigations, which perforce includes alleged violations of the Social Security Act.

35    By law it is established that the access and use by Defendants of the explicitly-protected
      data on the protected computer database (PMP) on the stated basis of a Medicaid Fraud
      investigation is explicitly unlawful. 105 CMR 700.012 Defendants should have known
      and did know that they were in violation of 105 CMR 700.012 and the CFAA and that
      they intentionally accessed a computer without authorization and exceeded authorized
      access.

36    Defendants' chilling violation and conscious disregard for the explicitly-protected data
      privacy rights of the people is likely to be routine and affects anyone who had a
      prescription filled in Massachusetts, including residents of other States.

                SERIOUS CONSCIOUSLY-FALSE ALLEGATION AGAINST PLAINTIFF

37    The Massachusetts Attorney General has committed itself in writing to declaring that
      Plaintiff Dr. Bharani and 16 of his patients have committed violations of the Social
      Security Act and engaged in Medicaid fraud.

38    This is a very serious allegation that should not simply be thrown at people, in writing, on
      official letterhead, without any basis in fact.

39    If indeed Plaintiff Dr. Bharani and fully 16 of his patients (whom he has been treating for
      free the past five (5) years and has not billed the Government for their care) have engaged
      in Medicaid Fraud, there should already be sufficient real evidence of massive fraud,

                                                                                          9

evidence enough for the Massachusetts Attorney General to obtain an indictment from a

grand jury or at minimum a subpoena from a judge.

40   The absence of either till today is telling and clear evidence they intentionally violated

the Clean Hands Doctrine.

## CONSCIOUS VIOLATION OF CONSTITUTIONAL LAW AND STATE RULING AND AMBUSH AT HOME

41   The Massachusetts Attorney General flung this very serious allegation into an

administrative letter in a clear attempt to make a malicious end run around the due

process protections of the Fourth Amendment.

> *(Amendment IV: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.)*

42   The very nature of the action documents the total absence of real evidence of a crime.

43   Defendant Attorney General Healey is fully aware that the Government was never billed

by Plaintiff Dr. Bharani for these patients' care.

44   The letter sent by Defendant Attorney General Healey itself clearly acknowledges this

fact. Defendant Attorney General Healey's letter alleging Medicaid Fraud by Plaintiff Dr.

Bharani did not seek billing records. Instead it sought "immediate access" to

"Complete page-by-page medical records" for the 16 patients.

10

45    The aim of this letter clearly is to give the impression that Plaintiff Dr. Bharani is a
      criminal who would alter the patients' medical records if given even a moment's notice
      and therefore it was absolutely imperative for the Massachusetts Attorney General to
      immediately, post-haste, seal the medical records, to immediately remove the doctor's
      notes from his physical possession, that there was no time to waste, that it was an
      absolute emergency.

46    This end run around the Fourth Amendment by Defendant Attorney General Healey was
      an abuse of office in order to intimidate and tamper with the very witness who had
      officially alerted the Massachusetts Attorney General to aiding and abetting of Medicaid
      Fraud by high officials within the Massachusetts Office of Medicaid (MassHealth).
      Defendants clearly aimed to give a false impression on the basis of a consciously-false
      assertion on official letterhead.

47    Even worse, this "immediate" demand for "complete page-by-page medical records" had
      nothing whatsoever to do with investigating Medicaid Fraud and everything to do with
      aiding and abetting Defendant James Paikos, a state government employee presently
      being defended by Defendant Attorney General Healey in a civil lawsuit brought by
      Plaintiff Dr. Bharani.

48    On April 29th, 2015, Defendant Attorney General Healey sent Defendant Chris Cecchini
      and Defendant Jane Doe (who refused to identify herself) to Plaintiff Dr. Bharani's

residence to take immediate possession of his computer and medical records including medical notes written between 2012 through 2015.

49    Defendant Attorney General Healey launched this sudden stealth attempt at stealing Plaintiff Dr. Bharani's confidential medical files by abusing her official powers. Her action was aimed at helping her client, Defendant James Paikos, in his private civil action and publicly retaliating against an honest physician who actually filed a criminal fraud complaint. Applying the 'who gains?' analysis, Defendant Attorney General Healey's client, Defendant Paikos, is the sole beneficiary of this unlawful action.

50    Defendant Attorney General Healey was fully aware at the time that the AGO was in litigation with Plaintiff Dr. Bharani, that Plaintiff Dr. Bharani was represented by Counsel and thus all communications from the AGO should go through Counsel. Defendant Attorney General Healey ignored this ethical requirement in order to ambush Plaintiff Dr. Bharani on behalf of her client, in conscious violation of the Clean Hands Doctrine.

51    Plaintiff Dr. Bharani's elderly parents were home at the time and dealt with the sudden and deliberately intimidating action of the Defendants as best they could. All of a sudden they were confronted with what they perceived to be the menacing spectacle of Defendant Jane Doe silently standing across and blocking the doorway of their home with feet apart and arms folded. Their sworn affidavit documents their clear impression that had Plaintiff Dr. Bharani been present he would have been arrested on some pretext

just so his files could be physically taken by the Massachusetts Attorney General on behalf of her client. EXHIBIT 2

52    Plaintiff Dr. Bharani's elder parents have been left totally shaken by the reality of an Attorney General consciously violating the rule of law and the sanctity of their home. They now are in palpable distress daily, fearful of further Government abuse at any time and under any pretext amid the realization that the chief law enforcement official for this Commonwealth, Defendant Attorney General Maura Healey, has no respect for the rule of law.

53    Plaintiff Dr. Bharani, through his existing Counsel, individually informed Defendant Attorney General Healey, Defendant Assistant Attorney General Hoffman and Defendant Cecchini in writing that what they demanded was unlawful and the manner of their demand was even more so. Defendants Healey, Hoffman and Cecchini were informed they lacked both jurisdiction and probable cause. Defendants knew and should have known they lacked both jurisdiction and probable cause and had violated the Clean Hands Doctrine.

## CONCURRENT CONSCIOUS VIOLATION OF MASSACHUSETTS SJC PRECEDENT

54    Overriding the objections of the Massachusetts Attorney General, the Massachusetts Supreme Judicial Court had ruled in *Kobrin* that even a grand jury subpoena for medical records cannot be for "complete page-by-page" records as all reports from patients are required to be redacted before records are turned over to the Government.

("....but not those portions of his records reflecting any patient's thoughts, feelings, or impressions, or containing the substance of any psychotherapeutic dialogue, or exposing personal relationships of no concern to legitimate investigation.") *Commonwealth vs. Kennard C. Kobrin*. 395 Mass. 284 (1985)

55      This holds especially true for a Government's demand in the absence of a judicial
        subpoena issued "upon probable cause, supported by oath or affirmation."

56      Defendant Attorney General Healey's demand for "immediate access" to "complete
        page-by-page copies of the medical record (written and electronic)" was thus also a
        deliberate malicious end run around the precedent set by the Massachusetts SJC in
        *Kobrin*, a precedent that is binding also on this Honorable Court per the Erie doctrine.

57      In this context it is vital for this Honorable Court to note Defendant Cecchini's explicit
        written declaration -

                "Furthermore, as a public official, I certify that the records being requested, which
                may contain protected health information, are the minimum necessary for the
                purpose of this inquiry."

58      Plaintiff Dr. Bharani was supposed to believe that Defendant Attorney General Healey
        and Defendant Cecchini had an urgent pressing need to totally disregard the SJC's ruling
        in *Kobrin* when Plaintiff Dr. Bharani had not billed the Government for seeing his
        patients, when Plaintiff Dr. Bharani has been seeing all his patients for free for the past 5
        years, and when Defendant Attorney General Healey was fully aware of this fact and had
        not therefore demanded any billing records.

14

59     Plaintiff Dr. Bharani was supposed to believe that Defendant Attorney General Healey
       and Defendant Cecchini had an urgent pressing need for "complete page-by-page medical
       records" as the "minimum necessary" for an inquiry into Medicaid Fraud allegedly
       committed by Plaintiff Dr. Bharani and 16 of his patients.

60     It is vital for this Honorable Court to understand that the only legitimate need the
       Attorney General may claim for the confidential medical records of people is to compare
       the doctor's notes with the level of billing for a particular visit. This requires that the
       Attorney General have a bill for a particular visit and then demand the records to
       substantiate the legitimacy of that bill for that particular visit. This also requires that the
       doctor be a Medicaid Provider under the statutory provisions and have signed a Provider
       agreement. All of this is mandatory for any alleged Medicaid Fraud investigation.

61     In the absence of any money paid by the Government for any visit, the Government has
       no legitimate need for people's confidential medical records, especially in the form of
       "immediate access" to "complete page-by-page copies of the medical record (written and
       electronic)" as the "minimum necessary" for allegedly investigating Medicaid Fraud.

62     Defendant Attorney General Maura Healey and the other Defendants have now proved
       that there truly was no legitimate need for "immediate" access as five full months have
       gone by since the sudden ambush on Plaintiff Dr. Bharani's residence with only silence
       emanating from Defendant Attorney General Maura Healey's office.

63    Plaintiff Dr. Bharani has standing as (1) he personally has suffered some actual or
      threatened injury as a result of the challenged conduct; (2) the injury can fairly be traced
      to that conduct; and (3) the injury likely will be redressed by a favorable decision from
      the court.

64    Plaintiff Dr. Bharani thus brings this action before a JURY to recover damages caused to
      Plaintiff by Defendants' attempt to unlawfully obtain Plaintiff's computer and data in
      violation of the probable cause and due process protections of the Fourth Amendment and
      Massachusetts case law, intentionally exceeding authorized access to a protected
      computer and protected computer database that is for the use of an agency of the
      Government of the United States in conscious intentional violation of the Computer
      Fraud and Abuse Act 18 U.S.C. § 1030 and conscious intentional violation of
      Massachusetts 105 CMR 700.012 and the Clean Hands Doctrine.

## CLAIMS FOR RELIEF

## COUNT 1

### VIOLATION OF 18 U.S.C. § 1030 et seq. COMPUTER FRAUD AND ABUSE ACT

65    Plaintiff reasserts the allegations set forth in paragraphs 1 - 64 as though fully set forth
      herein.

66    Medicaid is a Federal program that distributes Federal tax dollars.

67     The Medicaid Fraud Division at the AGO serves as the Medicaid Fraud Control Unit for
       the Commonwealth of Massachusetts and is certified annually by the Secretary of the
       U.S. Department of Health and Human Services.

68     The Medicaid Fraud Division at the AGO is funded by Federal tax dollars to the level of
       75% of it's annual budget. For 2015 the budget is $4,033,878. Therefore approximately
       $3 Million of this comes from Federal funds.

69     The Prescription Monitoring Program (PMP) is a computer database managed by the
       Drug Control Program (DCP), a Government entity within DPH and HHS of the
       Commonwealth of Massachusetts. The PMP database receives Federal grants,
       especially from the Department of Justice, based on the U.S. Department of Justice
       Appropriations Act (Public Law 107-77), at approximately $400,000 every two years, to
       enhance interstate communication, a Federal goal.

70     All computers hosting the Prescription Monitoring Program computer database are
       protected computers that are for the use of an agency of the Government of the United
       States under the Computer Fraud and Abuse Act (CFAA) 18 U.S.C. §1030(e).

71     Massachusetts Regulation 105 CMR 700.012 which governs authorized access to the
       protected computers and protected database explicitly requires any and all access by law
       enforcement to involve a drug-related investigation.

72     The 2013 annual report from HHS/DPH/DCP to the Massachusetts Legislature claims:

> "*DCP allows law enforcement and regulatory agencies to obtain case reports in support of open and ongoing **controlled-substances related investigations**. Case reports must be specific to a particular prescriber, pharmacy or person. In accordance with the terms and conditions of use, investigators registered with the PMP may also use the online system to obtain this information. However, it is **strictly prohibited** to use the MA Online PMP as part of routine inspections, for general screening, or any other manner not in support of an already open and ongoing investigation. In fact, DCP requires regulatory and law enforcement employees to provide background case information relevant to a specific PMP request via an online form.*" Emphasis added. ~~EXHIBIT 7~~

73    Going by the simple and clear language of Massachusetts regulations (and terms and conditions of use) and DCP's unequivocal assurances in it's official report to the Massachusetts Legislature, an alleged Medicaid Fraud investigation, that too without probable cause and without a warrant or subpoena issued upon probable cause after oath, fails to satisfy the clear requirement in 105 CMR 700.012 (the legal authorization) of an already open "drug-related" investigation prior to accessing this protected computer database. No individual person, especially an Executive-branch employee, has the authority to override the regulations and the explicit assurances furnished to the Massachusetts Legislature.

74    <u>By law</u>, access by Defendants to the protected private confidential prescription data of all of Plaintiff's patients, held on protected computers and an explicitly protected database (PMP), was an unauthorized intrusion and intentionally in excess of authorization as defined by §1030(a)(2)(B), §1030(a)(2)(C) and §1030(e)(6) of the CFAA and thus immune from narrow/broad 'interpretations' or 'Circuit splits.' Furthermore, this intentional unauthorized access was in furtherance of a criminal or tortious act, namely aiding and abetting Medicaid Fraud and tampering with a witness who reported it.

18

75      Plaintiff Dr. Bharani prescribes medicines to more than 16 patients. Defendants have
        selected 16 of Plaintiff's patients who are on Medicaid from the protected computer
        database (PMP) which lists all of Plaintiff's patients who have received prescriptions.
        Defendants violated the explicitly protected data privacy of all of Plaintiff Dr. Bharani's
        patients simply because they are his patients.

76      The only criteria for the selection of these 16 patients were that they were Plaintiff's
        patients and they were on Medicaid. There was no "drug-related" criterion applied.

77      Plaintiff Dr. Bharani can fully prove beyond even a shadow of a doubt that this protected
        computer database (PMP) was accessed to select this list of patients. This list could not
        have been compiled from any other source on earth.

78      Plaintiff Dr. Bharani can also fully prove that the patients do not share any other criterion
        including prescriptions for certain classes of medicines, thus precluding Defendants from
        now falsely claiming they were hastily responding to an "opioid crisis" when they
        violated the CFAA intentionally and in furtherance of a criminal or tortious act, namely
        aiding and abetting Medicaid Fraud and tampering with a witness who reported it.

79      Defendants' use of the protected computers and protected database intentionally in excess
        of their authorization and in violation of the CFAA was aimed solely at causing and has
        caused Plaintiff massive injury and irreparable harm with "loss" – as defined in
        §1030(e)(11) – substantially in excess of $5,000 over a one-year period including direct

                                                                                              19

costs owing to having to respond to this violation, including consulting with each of his 16 patients who were targeted and accused of Medicaid Fraud simply for being his patients, seek legal advice and prepare this action.

80    Defendants' intentionally unauthorized use of the protected computers and protected database intentionally and maliciously in excess of their authorization in order to procure a list of Plaintiff's patients and subsequent written false official claim of a Medicaid Fraud investigation remains a massive injury to Plaintiff who for years to come will be forced to disclose this fact on official forms even though the claim is consciously fraudulent and the list was procured in intentional violation of the CFAA in furtherance of a criminal or tortious act, namely aiding and abetting Medicaid Fraud and tampering with the witness who reported it.

81    Defendants' intrusion into the protected computers and protected database intentionally and maliciously in excess of their authorization in violation of §1030(a)(2)(B), §1030(a)(2)(C) and §1030(e)(6) in furtherance of a criminal or tortious act, namely aiding and abetting Medicaid Fraud and tampering with a witness who reported it, has irreparably harmed Plaintiff's ability to practice his profession, harmed Plaintiff's ability to credential with Medicare and Medicaid or private insurers, harmed Plaintiff's ability to routinely renew his medical license, harmed Plaintiff's ability to earn a living despite being totally innocent and entitles Plaintiff to an award of punitive damages.

82   Plaintiff's eventual losses and damages from Defendants' violation of the CFAA are thus
     massive and many magnitudes higher than the threshold sum of $5000.

83   All Defendants knowingly and intentionally conspired to commit the offenses detailed
     above and all meet the definition of "person" as defined by §1030(e)(12).

84   Because Defendants' conduct involves at least one of the factors identified in
     §1030(c)(4)(A)(i), and for the reasons set forth with particularity above, Plaintiff is
     entitled to assert this civil action to obtain compensatory damages and injunctive relief
     pursuant to 18 U.S.C. §1030(g).

85   Because Plaintiff's action is begun within 2 years of the date of the act complained of or
     the date of the discovery of the damage, Plaintiff is entitled to assert this civil action to
     obtain compensatory damages and injunctive relief pursuant to 18 U.S.C. §1030(g).

## COUNT 2

### VIOLATION OF 18 U.S.C. § 2701 STORED COMMUNICATIONS ACT

86   Plaintiff reasserts the allegations set forth in paragraphs 1 - 85 as though fully set forth
     herein.

87   Medicaid is a Federal program that distributes Federal tax dollars.

88     The Medicaid Fraud Division at the AGO serves as the Medicaid Fraud Control Unit for
       the Commonwealth of Massachusetts and is certified annually by the Secretary of the
       U.S. Department of Health and Human Services.

89     The Medicaid Fraud Division at the AGO is funded by Federal tax dollars to the level of
       75% of it's annual budget. For 2015 the budget is $4,033,878. Therefore approximately
       $3 Million of this comes from Federal funds.

90     The Prescription Monitoring Program (PMP) is a computer database managed by the
       Drug Control Program (DCP), a Government entity within DPH and HHS of the
       Commonwealth of Massachusetts. The online PMP database receives Federal grants,
       especially from the Department of Justice, based on the U.S. Department of Justice
       Appropriations Act (Public Law 107-77), at approximately $400,000 every two years, to
       enhance interstate communication.

91     All computers hosting the Prescription Monitoring Program computer database are
       protected computers that are for the use of an agency of the Government of the United
       States.

92     Massachusetts Regulation 105 CMR 700.012 which governs authorized access to the
       protected computers and protected computer database (PMP) explicitly requires any and
       all access by law enforcement to involve a "drug-related" investigation.

93    Going by the simple and clear language of Massachusetts regulations and DCP's
      unequivocal assurances in it's official report to the Massachusetts Legislature, an alleged
      Medicaid Fraud investigation, that too without probable cause and without a warrant or
      subpoena issued upon probable cause after oath, fails to satisfy the clear requirement in
      105 CMR 700.012 (the legal authorization) of an already open "drug-related"
      investigation prior to accessing this protected computer database.

94    The U.S. Attorneys' Criminal Resource Manual #1061 explicitly clarifies that §2701(a)
      "is not intended to criminalize access to "electronic bulletin boards," which are generally
      open to the public. A communication will be found to be readily accessible to the general
      public if the telephone number of the system and other means of access are widely
      known, and if a person does not, in the course of gaining access, encounter any warnings,
      encryptions, password requests, or other indicia of intended privacy."

95    The protected computer database (PMP) hosted on protected computers, funded by
      Federal funds, and for the use of an agency of the Government of the United States does
      not meet any definition of a system readily accessible to the general public as all persons
      desiring access are made fully aware of warnings, encryptions, password requests and
      other indicia of intended privacy, including filling a separate form confirming that their
      access request complies with the explicit requirements of 105 CMR 700.012.

96    Access to this protected computer database (PMP) is restricted with individual requests
      required to affirm they comply with 105 CMR 700.012 for legitimate on-going, open

23

drug-related investigations before authorized access is granted to the stored communications from pharmacies about select patients.

97 <u>By law</u>, access by Defendants to the protected private confidential stored prescription data of all of Plaintiff's patients, held on protected computers and an explicitly protected database, was explicitly unauthorized and intentionally in excess of authorization as defined by §2701(a)(1) and §2701(a)(2) of the SCA, in furtherance of a criminal or tortious act, namely aiding and abetting Medicaid Fraud and tampering with a witness who reported it and entitles Plaintiff to an award of punitive damages.

98 Defendants fully meet the definition of persons as defined by §2711 of the SCA.

## COUNT 3
## EQUITABLE RELIEF

99 Plaintiff reasserts the allegations set forth in paragraphs 1 - 98 as though fully set forth herein.

100 The following requests for declaratory judgment involve matters in actual controversy that arise under the Constitution and laws of the United States compelling judicial declaration of the legal rights and individual interests of Plaintiff Dr. Bharani.

101 The degree of lawlessness at the level of the Massachusetts Attorney General that has been laid out with particularity in this complaint should not be tolerated. In a different

24

case the Courts have already been informed about corruption within the Office of the present Massachusetts Attorney General.

102   The chilling violation and conscious disregard by Defendants of explicit Massachusetts law and the CFAA is being exposed to this Honorable Court and the general public due to the integrity of Plaintiff Dr. Bharani who respects compliance with 18 U.S.C. 4, and views the conduct of Defendants as egregiously un-American and more in keeping with the well-documented practices of the Stasi.

103   Plaintiff Dr. Bharani respectfully requests this Honorable Court to condemn Defendants' conduct publicly in the strongest terms in a judicial order declaring the actions of Defendant Attorney General Healey to be a malicious abuse of office. To use the words of Telford Taylor, Attorney General Maura Healey's accusation against Dr Bharani is a fraud that has "no purpose or effect other than to expose [an individual] to public contumely and to the loss of [his job] or perhaps of [his] livelihood" and "nothing other than a method, outside of law, of inflicting punishment on individuals" that should and can only be publicly condemned. Plaintiff has no adequate remedy of law for Defendants' continued violation of the CFAA.

104   Plaintiff requests an official referral of Defendants to the U.S. Attorney for prosecution under 18 U.S.C. 1030, 18 U.S.C. 2701, 18 U.S.C. 371, 18 U.S.C. 4, and other relevant US statutes. Only a custodial sentence shall be an adequate remedy and future deterrent to those seeking high office and enormous asymmetric power.

105    Plaintiff requests a judicial order officially referring Defendant Attorney General Healey
       to the Board of Bar Overseers for disciplinary action.

106    Plaintiff also seeks an injunction permanently enjoining Defendant Attorney General
       Healey from further routinely violating the protected privacy of anyone who had a
       prescription filled in Massachusetts, including residents of other States, and from further
       violating 105 CMR 700.012, the CFAA and the SCA.

107    Plaintiff seeks a judicial order that no public funds be expended for the defense of the
       Defendants as that would constitute an extreme conflict of interest. Plaintiff also seeks a
       judicial order reminding Defendant Attorney General Healey that regulations and laws
       are to be obeyed, including the Clean Hands Doctrine and SJC precedents, and that the
       Attorney General is not above the law.

108    Plaintiff requests a judicial order officially referring Defendant Attorney General
       Healey's client, Defendant James Paikos, to the Board of Bar Overseers for disciplinary
       action.

109    Plaintiff seeks a judicial order enjoining Defendant James Paikos from any further access
       to the protected computer database (PMP) due to a history of exceeding authorized access
       and routinely violating the protected privacy of anyone who had a prescription filled in

Massachusetts, including residents of other States, and from further violating 105 CMR 700.012 and the CFAA.

110     Plaintiff seeks a judicial order enjoining Defendant Adele Audet from any further access to the protected computer database (PMP) due to a history of exceeding authorized access and routinely violating the protected privacy of anyone who had a prescription filled in Massachusetts, including residents of other States, and from further violating 105 CMR 700.012 and the CFAA.

111     Plaintiff seeks a judicial order enjoining Defendant Loretta Cooke from any further access to the protected computer database (PMP) due to a history of exceeding authorized access and routinely violating the protected privacy of anyone who had a prescription filled in Massachusetts, including residents of other States, and from further violating 105 CMR 700.012 and the CFAA.

112     Plaintiff seeks a judicial order enjoining Defendant Steven Hoffman from any further access to the protected computer database (PMP) due to a history of exceeding authorized access and routinely violating the protected privacy of anyone who had a prescription filled in Massachusetts, including residents of other States, and from further violating 105 CMR 700.012 and the CFAA.

113     Plaintiff seeks a judicial order enjoining Defendant Chris Cecchini from any further access to the protected computer database (PMP) due to a history of exceeding authorized

access and routinely violating the protected privacy of anyone who had a prescription filled in Massachusetts, including residents of other States, and from further violating 105 CMR 700.012 and the CFAA.

## COUNT 4
## CIVIL CONSPIRACY

114    Plaintiff reasserts the allegations set forth in paragraphs 1 - 113 as though fully set forth herein.

115    An agreement and conspiracy existed between and among the Defendants, and other co-conspirators yet to be identified during discovery, to access the private protected prescription data of all of Plaintiff's patients, simply because they were Plaintiff's patients, in the conscious absence of any legitimate "drug-related" investigation, in conscious intentional violation of 105 CMR 700.012 and the CFAA.

116    Each Defendant intentionally participated in the agreement and conspiracy.

117    Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with particularity above and liability therefore attaches equally to each Defendant.

118    Plaintiff has been damaged by the conspiracy and Defendants' reckless actions in furtherance thereof and is entitled to an award of punitive damages.

## DEMAND FOR A JURY TRIAL

119   Plaintiff demands a trial by jury on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Bharani respectfully requests that this Honorable Court enter final judgement in favour of Plaintiff and against the Defendants, jointly and severally, as follows:

a)   Awarding Plaintiff compensatory, consequential, punitive and special damages including, without limitation, lost goodwill, damage to his reputation, damage to his professional good name, damage to his ability to earn a living as a physician, intentional infliction of emotional distress, actively intimidating a witness, damages accruing from responding to Defendants' violation of the CFAA and SCA, together with pre- and post-judgement interest, as provided by law; with a minimum order of $1 million.

b)   Awarding Plaintiff reasonable attorneys' fees and costs associated with this action;

c)   Granting permanent declaratory and injunctive relief in favour of Plaintiff Dr. Bharani and against Defendants as described above and enjoining Defendants from engaging in the unlawful practices described in this Complaint;

d)   Enjoining Defendants from all further access to the protected computer and protected database (PMP);

e)   Entering a judicial order declaring the actions of the Defendant Attorney General Healey to be a malicious abuse of office;

f)   Entering an official referral of Defendant Attorney General Healey to the U.S.

Attorney for prosecution under the relevant US statutes, including, but not

limited to, CFAA and SCA;

g)   Entering an official referral of Defendants Hoffman, Cecchini, Jane Doe, Paikos,

Cooke and Audet to the U.S. Attorney for prosecution under the relevant U.S.

statutes, including, but not limited to, CFAA and SCA;

h)   Granting such further relief as this Court deems just and proper.


## PLAINTIFF'S REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d) of the U.S. District Court for the District of Massachusetts,

Plaintiff Dr. Bharani requests oral argument for the above-captioned matter on the belief

that a hearing may assist the Court.


Respectfully submitted this 30th day of September, 2015

Bharanidharan Padmanabhan MD PhD
Plaintiff, pro se
30 Gardner Road #6A, Brookline MA 02445
617 5666047 - scleroplex@gmail.com